We'll hear argument next in Case 22-105, Coinbase v. Bielski. Mr. Katyal. Thank you, Mr. Chief Justice, and may it please the Court, when a party appeals the denial of a motion to compel arbitration, it stays litigation. That result follows from the centuries-old divestiture rule, as well as by Congress' choice to adopt an asymmetric interlocutory rule in FAA Section 16A. The parties today agree on a lot, notably that the divestiture rule of Griggs is the law. The filing of a notice of appeal divests the district court of its control over those aspects of the case involved in the appeal. The only question today is whether district court proceedings are aspects of the case involved in the appeal. For three reasons, the answer is yes. First, Congress amended the FAA to allow immediate appeals when district courts deny motions to compel arbitration, but not when they approve them. And Congress did something else unusual and made those appeals nondiscretionary. Those choices reflect Congress' fear about the interim harm from continued litigation. In 1988, Griggs was ensconced as the law, and Congress knew that authorizing these interlocutory appeals would authorize the usual stays, too. Indeed, when Congress wants to prevent a mandatory stay, they say so expressly, with anti-stay laws. Congress enacted such a provision one day before 16A was enacted, but 16A has no anti-stay provision. Second, these appeals involve the entirety of the district court case. An arbitration agreement does two things. First, it bans district court proceedings, and second, is an affirmative consent to an alternative process. The whole point of an immediate appeal is to protect those rights before they're lost. And third, it's undisputed that district court action is stayed in other interlocutory contexts, such as qualified immunity. Arbitration is no different and shouldn't be treated less favorably than other rights, the very thing Congress enacted the FAA to protect against. I welcome the court's questions. Haven't we treated qualified immunity differently from other interlocutory appeals? I don't believe so, Your Honor. I mean, certainly with respect to collateral order doctrine, you've said that qualified immunity creates a collateral order. And here Congress has basically put 16A appeals, arbitration appeals, on it. But with respect to qualified immunity in cases like Mitchell v. Forsythe, you've acknowledged that once someone invokes qualified immunity, it basically stops discovery. I think my point is that qualified immunity, I think, would be a bad example of how we would normally treat interlocutory appeals. Can you give me another example where the stay would be automatic? So I think in general, the stay, the divestiture rule applies. The question, Griggs, applies. The question in any given case is what that rule means in practice. So, for example, take the criminal interlocutory appeal statute, 18 U.S.C. 3731. It doesn't say a word about a stay, but it will authorize the government to have an interlocutory appeal. And what courts have said there is that there is a divestiture rule, and it prevents things like the trial from going forward. The things short of the trial are okay because it doesn't conflict with Congress's authorization of the right. Well, let me be clear, and this is my final point. Does it follow automatically that when you have an interlocutory appeal, there's an automatic stay? So in general, it's not that there's an automatic stay. It follows that the divestiture rule applies, and then it depends on the particular context. What does that mean? So it means like in 3731, there's an interlocutory appeal, but it doesn't automatically stay, Justice Thomas, everything. There are still some trial proceedings that can occur. Here, like in qualified immunity, like in sovereign immunity, like in double jeopardy, the very right that Congress has authorized for that immediate appeal is being taken away effectively by the district court if any litigation proceeds. Why is that different than a foreign selection clause, which we say is not subject to an automatic stay? It seems to me that litigating in New York City versus litigating in, I'm making up a town, a tiny town in Timbuktu. I'm sure there is a city. I'm not denigrating it. In Timbuktu, the costs are going to be substantially less. Attorney's fees are likely to be less. Travel fees, expert fees, everything's going to be less. But there, the rigs doesn't work. So, Justice Otamara, two things. One is I don't believe you've ever said that if it's just a foreign selection clause, rigs doesn't work. You certainly said if it's a foreign selections argument, you don't have a right to an interlocutory appeal. But that is the very thing that Congress in 16-8 changed. That's why this is such a rare case because Congress... Well, I look at rigs as a very simple rule. Rigs says if what the district court is going to do moots out the appeal, then you have to have an automatic stay. Because you can't have a district court mooting out what the court of appeals are doing. And rigs works the opposite. You can't have a court of appeals deciding an issue on appeal. We should stay our own appeal. That's what rigs said until the district court tells us what it's going to do with this final judgment. So, rigs was working both ways. Each court will respect that we will stay only if we threaten to moot out each other's points. So, Justice Otamara, two points about this. One is I don't quite think that's what rigs says. I don't think there's language about mooting out. Well, that's how Congress has seen it because Congress seems to go both ways on this issue. So, I will get to the Congress's point in a moment, but just the language of rigs is whether the district court has control over those aspects of the case involved in the appeal when it's presiding over district court litigation. And our point to you is... It has no access here.  In the case of Suzuki, there was a motion to reconsider the arbitration motion. That's a pure rigs case. And the district court said, no, the court of appeals is looking at that arbitration order. I can't now reconsider it. So, Justice Otamara, our point here is that when that very question on appeal is does the district court have any authority at all to proceed, then actions taken, whether it's deciding a motion to dismiss or ordering discovery, and discovery, of course, can come out and spill out into the open, which is the very thing that arbitration agreements are bargained for to prevent against, all that toothpaste can't be put back in the tube. And Congress, and I will now get to your point, Congress in 16A did something unusual by authorizing that immediate appeal. You can't wait for those trial rights to occur later on. And here, Congress's backdrop... And then under 129924D4 said for motions to transfer past the very same day, for motions to transfer to the U.S. Court of Federal Claims, you have to have a mandatory stay. If Griggs was the law, it didn't have to pass that. So, Justice Otamara, there's a lot there, so I'm going to ask for a little leeway to answer every part of your question. So, first, the background rule of Congress, 11 separate times, going back to 1891, is when they want to abrogate a stay, an automatic stay, they say so. They said so just the very day before 16A was passed. So, what did they... They didn't abrogate it, and yet they said... Right, so they didn't have to say anything here, because if you were to put yourself in Congress's shoes in 1988 and ask, okay, we're doing this unusual thing, authorizing this immediate stay, what does that... Oh, authorizing this immediate appeal, what does that mean for stays? They knew they had to affirmatively say something to abrogate it. That was the background rule. It's the only way to understand... You still haven't explained 1292. I promise you I will get there, but I just want you to understand that the background rule is Congress... I don't know how much of a background rule there is, but Congress follows it. Between your brief and the other side's brief, all I know is that when Congress thinks about a stay, it either says yes, do it, or no, don't do it. When it's not thinking about a stay, it doesn't say anything. So this is so important, because this is not a situation in which the statutes cancel each other out, and I'll explain the two statutes we're talking about in a minute, but I'm just saying, first, it's hard to understand anything which Congress is doing in those 11 statutes besides being mere surpluses. They had to believe that there was a background automatic stay rule. So why isn't it... I don't understand why that's true. I mean, you're suggesting that every time Congress wants an immediate appeal, it also wants an automatic stay, but Congress might well say what we want is an immediate appeal and a discretionary stay regime. Absolutely, Justice Kagan, and that's what they've done. And it seems as though that's what has happened here, and the Griggs, you might say, exception to that is an exception. It's a judge-made exception. We should read it narrowly. It's an exception that applies when the appeals court and the district court are doing the exact same thing, such that the district court is kind of stepping on the appeals court everything that the district court does. This district court is not stepping on the appeals court. The appeals court is trying to figure out arbitrability. The district court is trying to figure out the merits. Justice Kagan, that is the very argument on appeal authority, and this is not a circumstance in which Congress did what you're saying. So if you compare, for example, 16A, which says nothing at all about a stay, to, for example, what it said the day before, which is, quote, neither the application for nor the granting of an appeal under this paragraph shall stay proceedings, when Congress wants to have a discretionary district court stay determination, they say so. And this brings me to my promise to Justice Omayor, the two statutes that you mentioned are the two ones that my friend relies on. Neither work. Section 3, you point to, of the Arbitration Act, and to be sure, it's an affirmative authorization of a stay pending arbitration. That's not like a stay pending appeal. There's no background divestiture rule about stays pending arbitration. Congress had to say something about it because it had no background rule that it was legislating against. It's an entirely different situation. They had to mint a rule. The only other one that I think my friend really relies on is 1292D4B, and that D4B provision is very different for reasons our apply brief says. 16A was drafted from scratch. There was nothing there before. D4 was written on top of the preexisting D3, which passed in 1982, and lo and behold, that has an anti-stay provision akin to the one Justice Kagan was suggesting Congress puts in. Here's what it says. So they're abrogating the stay rule. It's an anti-stay rule. Then in 1988, they passed the statute my friend points to and that Justice Sotomayor asks about, D4. It adds a 60-day stay and a stay if there's a denial or motion of a grant to transfer to the Court of Federal Claims. Now, Congress had to resurrect the divestiture rule. They had just taken it back in 1982, and so that's why you see Congress doing what they're doing there. And, of course, with the 60-day provision, as our apply brief says, it makes sense that they would affirmatively come in and authorize an automatic stay for something longer than 60 days if they have a 60-day provision in it. Mr. Cotfield, it is a huge benefit to you to be able to take an interlocutory appeal, right? Why is it unreasonable to think that Congress thought that was enough? I mean, they didn't say anything about a stay, yet they focused on whether or not the problem before you, whether or not continued litigation would interfere with your claims of the right to arbitrate. They gave you the most valuable rights you could have. You don't have to wait until the case is over. You can go up right away. So they were thinking about the problem you face when you lose on your arbitration claim and litigation is going, and this is what they gave you. Why isn't that enough? So, Mr. Chief Justice, I think because the background rule at the time was always that there would be an automatic stay and the divestiture would apply in circumstances like this. And so, you know, that's why you have these 11 statutes, which my friend can't explain what they're about. There is no time in which Congress does what you're saying, which they grant an interlocutory appeal and then say, oh, we're also going to give you this automatic stay right. That statute doesn't exist. My friend tries to claim it's Section 3 and 1292D4. Those arguments, I think, fall apart under inspection. Rather, the background rule has always been this. You could look to the immunity context. You could look to 3731, what have you. It's all there. Now, Justice Kagan, you also set a separate point about this being a judge-made rule, and maybe it's not jurisdictional. Certainly, Griggs used the word jurisdictional back in 1982, but that was a time when the court used that word more loosely. Our central point to you is even if you thought of this as a judge-made rule, that gives you no more discretion. It's still a claims processing rule, as my friend on the other side said. It is just as mandatory for this court to follow. You've said so many times. You've said the only times you abrogate judge-made claims processing rules is if it flies in the face of long tradition. That's what you said in the New York Times. I think what I was suggesting is that we usually try to keep our judge-made rules narrow to deal with only situations which really cry out for them. The situation that cried out for it in Griggs was a situation in which the district court was doing the same thing that the appellate court was doing. And so it was stepping on the appellate court every move it made. That is not the situation here. I mean, I can understand why you'd prefer everything to stop while the appellate court is dealing with the arbitrability issue, but the district court is not any longer dealing with the arbitrability issue. So the two can go their merry way, coincident with each other. Now, if the district court or the appellate court thinks that, gosh, you guys have a really good claim and you're going to end up winning, I guess this would be the appellate court, in the appellate court, you can get a discretionary stay. But otherwise, you know, you've gotten a pretty valuable thing. You just haven't gotten the whole ball of wax. So I think the question here is what Congress intended in 16-A. And I think the best way of understanding it, apart from all these policy concerns you're raising or anything else, is Congress acted against the backdrop. I'm not raising policy concerns. 16-A does not say what you wanted to say. It just doesn't. I'm not saying that 16-A by itself does the work. I'm saying 16-A. You stood up and said it's all about Griggs. I'm saying Griggs is about a very much narrower situation than the situation that we're in now. I think it's about 16-A plus Griggs together. So what 16-A does is it brings us into the unique interlocutory context. And then the question is, what does Congress think? If you were sitting in Congress in 1988 and you've taken the step to authorize immediate interlocutory, one-sided appeals from arbitration, you've said this right is so important, we don't want you to wait to go through the trial and district court proceedings. You get to vindicate that now. Letting the district court proceed, perhaps for years, as the amici say, this happens, it's a real problem. But can we focus in on what it is that you're vindicating at that moment? And here's my conceptual problem with your argument. At the moment in which you're taking the interlocutory appeal that they authorize under Section 16, what you are vindicating is your claim that this is subject to arbitration after a district court has denied you that motion. What I guess I don't understand is it seems to me that your argument is asking for an extension of the stay principle in the following way. So Section 3 tells us that once a district court decides, yes, yes, you can go to arbitration, then upon application of a party, the district court has to stay the trial proceedings. Now, presumably, if a party doesn't ask, the district court can keep going. But you're now suggesting that in a situation in which the district court says, no, you don't go to arbitration, somehow Congress intended for that circumstance, the appeal of arbitrability, to also give rise to an automatic stay. And I guess I don't understand that. As you correctly described our argument, Congress did something very unusual. It's a one-sided interlocutory appeal. So if the motion to compel arbitration is granted, the other side doesn't get it. But if it's denied, then you get to run to the Court of Appeals immediately. The reason for that is because Congress decided that the rights at issue were so important. I understand that. But there are other situations in the law in which Congress grants interlocutory appeal and says, as you admit, you don't have a stay as a result. So just the fact that you get an interlocutory appeal doesn't indicate necessarily that Congress is also saying that a stay follows, because there are many situations in which Congress expressly, right, divorces the two and says you can go interlocutory but no stay. Yeah, Justice Jackson, that's exactly your point, which is when Congress authorizes an interlocutory appeal and they're worried about an automatic stay, if they don't think it's one's granted, then they say or there would be a law. No, no, I think you're missing two concepts. I'm not talking about what they're actually saying. I'm pushing back on your suggestion that the reason they've given us an automatic stay and not said anything about, excuse me, an automatic appeal, an interlocutory appeal, and not said anything about a stay is because they understand it's so important that we go right to appeal and that, as a result, the proceeding should stop. But I look and I see a bunch of other situations in which Congress says this is really important, go right to the Court of Appeals, but don't stop the underlying proceedings. So every time Congress lets you interlocutory appeal, it is not necessarily indicative of their view that the underlying proceedings should stop. Justice Jackson, my point is if Congress doesn't think it follows that an automatic stay comes from an interlocutory appeal, they say precisely that. And this isn't just some made-up position. This is not just the position of the majority of the circuits. It's what the two main federal treatises, which my friend on this side praises, Wright and Miller and Morse, both say is the consequence of the Griggs divestiture rule. That's the way it applies, and it applies that way in other contexts, picking up on Justice Thomas's point about state sovereign immunity, about qualified immunity, and about double jeopardy. And so if you don't read it this way, you very well risk undoing those automatic stays in all of those other contexts. If there isn't an automatic stay, will the party whose motion to compel arbitration ever be able to obtain, to satisfy the ordinary stay factors that govern whether a discretionary stay can be issued, namely the irreparable harm requirement? As our brief says, and the amici briefs say, we have a lot of empirical evidence on this that shows that these discretionary stays are not granted under the N-10 factors, and that huge harm results in the interim, because discovery comes out, it spills out into the open, which is the very bargained-for thing that the arbitration agreement was all about. That toothpaste can't later be put back in the tube. That's why these stays and these automatic stays are so important. So that's, I think, one point. And the other is, this case, Justice Alito, illustrates exactly that. I mean, the district courts here in both cases said, these are actually pretty good arguments for arbitration, arbitrability, and reasonable minds can differ about this, but they summarily deny the stay, and that's why we're here. And that happens time and time again. And if you were to ask yourself, what was Congress thinking in 1988 when they authorized these immediate appeals, they said, we don't trust district courts in this unique area, that they get it wrong. Indeed, the amici have given you a lot of empirical evidence to show that there's a 50% reversal rate in 16A appeals. Can I interrupt and just follow up on what your answer to Justice Alito is? I think the problem for you is Moses H. Cohn and Justice Kagan was talking about this arbitrability being distinct from the merits. And I guess I want to ask you, let's assume that the Griggs principle applies in the background. You're talking about the toothpaste not being able to be put back in the tube. It sounds to me like you're saying that even if Griggs applies, the issue that's being litigated here in a different way, not quite as crisply as qualified immunity or double jeopardy, but it is the issue, the arbitrability. And I think you responded to Justice Sotomayor earlier, it's a little different than the Timbuktu because of the different procedures. I think you have to win that argument if you win. So do you want to say something about that, why it's not so distinct? I think you're correct in largely describing our position. So we can spot you, the language from Moses Cohn, absolutely, that arbitrability is a different question than the merits of the arbitration. Are you liable? The vestiture rule doesn't turn on whether the elements are the same or not. It's not some lesser included offense or not. Rather, the language from Griggs is, quote, the aspects of the case the district court would address, absent to stay, are involved in the appeal. So overlapping elements isn't the way anyone sees it. No one else sees it that way. So here, our point to you is that any action taken by the district court to resolve the merits, whether it's deciding a motion or even ordering discovery, which takes place against the backdrop of the court's powers to compel, that is precisely the issue on appeal. That's why Judge Easterbrook started this all back in 1997, and that is why I think the overwhelming majority of circuits, as well as the treatises, all agree. That's the way of thinking about this. And to the extent there's worries about delay or harm, Congress knows exactly what to do. They come in, and they pass an anti-state provision, the thing that Justice Jackson was asking about. They have no example, zero example, of an interlocutory appeal being authorized without an automatic state by silence. It just never happened. Mr. Kotchel, where does this background rule come from? Is it a federal common law principle? How old is it? Do you want to talk about that? Sure. I mean, at least I think it probably traces to some sort of claims processing rule. In 1883, this court in Howey said, quote, one general rule in all cases was an appeal suspends the power of the court below to proceed further in the cause. And then statutes starting in 1891 recognized exactly that. So Congress authorizes an interlocutory appeal in 1891. And at the very same time, they say that there is no automatic stay, that filing of that interlocutory appeal doesn't have an automatic stay. Thank you, counsel. What you're trying to avoid, of course, is losing your right to arbitrate or going through discovery. But there are a lot of ways you can address that. I mean, and it may be present in some cases more than others. The district court has a very busy schedule. You're set for trial in a year and a half. The court of appeals has got a much quicker schedule. You can ask the court of appeals for expedition. You can explain the situation to the district court judge. You say, you know, a stay is a very big deal. I'm not going to do that. But I'll make sure discovery doesn't start for another whatever. In other words, there are a lot of different ways to manage the problem you confront rather than claimed entitlement to something that isn't granted by the statute, which does grant you another significant entitlement. So, Mr. Chief Justice, I mean, it's certainly the case that people have tried. The amici briefs are all over this and say, look, we've tried every one of these other mechanisms. They don't work. Litigation moves too slow. Confidentiality concerns can't be protected adequately. And, again, I think we're not making a policy argument. We are saying that the bargained for right, what the person, what the people saying they've got a most valid motion to compel, they're saying, look, this is what we agreed to. We have a right to immediately appeal that. And that right will get undone in the interim because litigation, even under the fastest timetable, takes some time. Thank you. Justice Thomas. Justice Alito. Justice O'Neill. Section C6 of the FAA says, except as otherwise here and expressly provided, and we know that a stay is not mentioned expressly one way or another, any application to the court here under shall be made and heard in the manner provided by law for the making and hearing of motions. And I look at the civil procedures and they basically say that civil procedure rules and appellate rules that automatic stays are not the rule. They're the exception. And they require judicial determinations of whether a stay should be granted. And I look at the federal rules of civil procedure. To me, this is an easy case because I follow the federal rules of civil procedure and the statute that tells me to look there. Putting that aside, assuming that that's my view, just assuming, please don't try to re-argue the case. Really, what I think you're doing is you're fighting about how the Neekin factor should be addressed by courts below. And I don't know if this case provides that opportunity or not, but if you were to lose, it seems to me this is the perfect example of two cases with different pulls with respect to a stay. The Suzuki case has a very strong argument on the merits. In fact, the defendants, the respondents lost one below that this arbitration agreement doesn't cover this dispute at all. Whereas the Bieliski case is a typical case where there's an undisputed arbitration agreement. And the question is whether some state law trumps that. And there I could see where we would say if it's an issue where there's an undisputed arbitration agreement, that should be very high on the likelihood of confusion standard. Where there's a question about whether an agreement exists at all, then that's more likelihood of success by the person seeking to avoid arbitration. So just a few things. So first, I think we agree with you that this case does raise the question of whether the Neekin factors alone are adequate. They are sometimes, and they are not other times. That's my point. But why should you win? And our point, and the amici's point, is as a matter of practice, the Neekin factors mean stays are not granted. Both of these cases are perfect illustrations of that point. Well, I just said to you, in one of them they shouldn't have been granted. In the other one, arguably. And in the other one, arguably, a stay should have been granted. My bottom line is, how do we tweak them if they need to be tweaked? And you can also answer, this is not the case to do that. I think it's tough to tweak them, because this Court has said in Morgan v. Sundance, you don't want to have a special rule for arbitrability alone. So that's why we're saying apply the standard Griggs rule here, which you apply in other contexts, like the immunity cases in Double Jeopardy, which would confer an automatic stay. If you said you didn't want to have that automatic stay, and you didn't trust Congress to abrogate it, you wanted to abrogate it yourself and apply the Neekin factors, I think you'd have to look at a couple of things. One, this Court's 1974 decision that litigation burdens alone aren't irreparable harm. Two, you'd want to look to the harms of confidentiality and whether or not they could be adequately protected. And three, I think it would mean at least a presumption in favor of a stay in 16A appeals, in which there is a bargained-for allegation that this shouldn't belong in district court at all. You could do all of those things. It would get pretty special. I'd worry about the collateral consequences to Neekin in all sorts of other contexts, because it's used all over the place, not just, of course, here. So we think the better thing to do is to recognize that if you want to have an elimination of the automatic stay, do what Congress has done 11 times, and this Court shouldn't impose it on itself. And with respect to Section 6, we don't think that quite works, because there is a different rule for interlocutory appeals. And when interlocutory appeals are granted, then it carries with it the soil of the divestiture rule. Justice Kagan? So if I can paraphrase your argument, Mr. Katyal, it seems to me to go something like this. It's that it just has to be the case that when Congress gives you an immediate appeal, it also gives you an automatic stay, because otherwise you'd lose the very right that Congress thought was so important. But, of course, that sort of assumes that you have that right, and we shouldn't make that assumption. It might be that this is a case that should go to arbitration, or it might be that this is a case that shouldn't go to arbitration. What Congress did was it gave you a mechanism to decide which one. Now, as to whether you're entitled to a stay while that decision is made, we also have to take into account that you might be entirely wrong about arbitration, and that there are people who are not going to get what their rights are, which is the right to have their case actually litigated in the courtroom. So that's why Congress, in Section 16, gives you something very important, but denies you something else that you want, and says that's up to the courts to decide whether this is one that's appropriately stayed or not, depending, in large part, on the merits. So, Justice Kagan, what I think does the work in your question to me is Congress has decided that X. And our point to you is the statute is silent, and you know that when Congress has decided X, when they're worried about the automatic stay, they come in and affirmatively say so. There is no precedent. Congress has never said the reverse. So take qualified immunity, take double jeopardy, take state sovereign immunity. These are all examples in which the appeals could be described by exactly what you're saying, which is, well, you might win your appeal, you might not on immunity on the merits, but there's an automatic stay in all of those. Here it's even better. Congress has affirmatively authorized that interlocutory appeal in 16A, and this court in Digital Equipment Corporation, I think, you know, we agree with my friend on the other side at pages 36 and 37 of his brief when he says, Digital Equipment Corporation points the way. He says, you know, the private rights are generally not important enough to get an interlocutory appeal and the like, but you had footnote 7 in there, which he doesn't cite in his brief, which is about this statute, 16A. And 16A, the court says, created a sweeping impact and puts the right of 16A arbitration appeals akin to things like the immunity case. Mr. Gorsuch, this is Kavanaugh. You make a strong point about the 11 statutes, and then, so I think that's a strong point in your favor. You were also asked, though, about the standard of Griggs rule, and I think you were asked, is this the kind of situation that really cries out for application of the Griggs rule? And I guess I want you to answer that. Yeah, and my answer is the same answer that Wright and Miller gave, that Justice Easterbrook gave, which is the whole question on appeal is, does the district court have authority to act? And if there is action at the district court... Yeah, I got that, but what will happen if you don't win? So all sorts of rights in the interim could be destroyed. So take, for example, just the simplest thing, discovery. So if they try and force discovery in the district court, and then they get access to discovery, which may have embarrassing details, it could spill out into the newspapers. We see examples of that all the time, you know, in any given discovery litigation. That's exactly the thing that you arbitrate for. The reason the parties agree in the first place is to have that kind of confidentiality. That's just one example of many. The district court, I suppose, could decide a motion to dismiss or go even further, perhaps even have a trial. The divestiture rule is about stopping all of that in this case. Now, the divestiture rule in other cases won't be an automatic stay on everything. As I said to Justice Thomas, it depends on the nature of the underlying right, and sometimes certain things can go forward. But here, the very question, as Judge Easterbrook says, is, does the district court have power to do anything? And second, to pick up on something that Chief Justice said, and also I think Justice Kagan, the rights on the other side, it seems to me that the problem here at the core of this, maybe for both sides, is how long it takes to decide the appeal. If it were really fast, then the district court, from your perspective, then the district court wouldn't be able to do much. If it were really fast, then the delay wouldn't affect what Justice Kagan describes the rights. So if you prevail in this case, is there a way to ensure that courts of appeals move quickly? Any appropriate thing we can say to ensure that courts of appeals move quickly so that we mitigate the harm to the rights that were raised appropriately about the other side? Absolutely, Justice Kavanaugh. So first, it's telling the majority rule already is the one that we're advocating in the circuits. We don't see, I think, harms of delay or any impact. None of the amici on their side talk about it, whereas there's a lot of harm on the other side of not recognizing the rule in those two circuits that go the other way. What you could say about mechanisms to do stuff, obviously expediting the court of appeals, but there's also the ability, let's say, that you have a witness that might pass away or something and you'd be harmed by the automatic stay. I think there's three things that could be done there. One is you could seek a limited remand from the court of appeals to allow the district court to take that evidence or something like that. Second, you could get that evidence in the arbitration process itself. And third, district courts often have inherent powers to preserve the status quo and protect jurisdiction, and so that might also provide a mechanism to get that kind of testimony. Finally, if you're worried about it at the end of the day, Congress is the solution for that. That's why you have those 11 statutes. So if they wanted to abrogate the divestiture rule in some way, they certainly have the power to do it. Right now, qualified immunity, double jeopardy, state sovereign immunity, they all risk the same kind of policy harms of the dying witness, harms of delay and the like. Do you understand the concern on the other side is you automatically do this, it kicks the case down, delays your friend when you're on your side of the district court litigation, and that's what they're worried about? And if we can kind of mitigate that, that would solve a lot of the stated problems. Absolutely, Justice Kavanaugh. And that is, of course, the same problem in all the immunity contexts, double jeopardy contexts and the like. And yet there's an absolute rule here. There's actually much less to worry about because Congress has an easy ability to abrogate. They don't always with respect to state sovereign immunity and things like that. Thank you. Justice Barrett? What about the concern, though, that this can be used as a delay tactic even when it's frivolous? And I understand that you say and some of the courts in the majority have said, well, you know, courts of appeals can say this is frivolous. But it's also my understanding that that doesn't really happen in the majority. So how much protection is that? So first of all, obviously, this case we don't think is gamesmanship and the like. Of course. And so on. But I think the greater risk statistically is what happens in the other direction, that you have district courts that are being reversed 50 percent of the time. OK. But what about the delay? Yeah. And then with respect to that, I do think the courts have mechanisms in every circuit and they are used, Justice Barrett, as the amici say, in every circuit for frivolous appeals to be weeded out. There's one mechanism by which basically the district court tells the circuit court, you know, this appeal is frivolous. Give us back jurisdiction. Act right away. Motion to expedite or sui sponte motion to expedite. And it gets thrown right back to the district court. So I think that's one mechanism dealing with it. The other is what you said in Arthur Anderson versus Carlisle. You said there's all sorts of ways to, you know, to go after attorneys for frivolous lawsuits or costs and damages and things like that. And so that was actually about 16A. And you said there's all sorts of mechanisms that the court uses to deal with that. And to the extent Justice Kavanaugh picking up on his concern, I think this court, should it rule for us, should say something about all of those mechanisms that are available that you recognized already in Carlisle. Justice Jackson? Yes, thank you. So in response to Justice Kagan, you suggested that the statute was silent. And I guess I'm not sure about that. I see here a statute in at least a couple places in which it appears as though Congress was actually thinking about the interaction of appeals and stays in this context. 16B tells us that you have no appeals from orders granting stays. And I think really problematic for your argument is Section 3. Because the fact that Congress expressly speaks to a stay upon request if arbitration is authorized seems problematic. Because I would think we would expect to see that same kind of language with respect to this interlocutory appeal if that's what Congress intended. So can you help me to understand why this is not that scenario? Absolutely, Justice Jackson. I think if we were to ask what language we would expect if Congress wanted to stop an automatic stay, we've got all sorts of examples. No, not stop an automatic, grant an automatic stay. With respect to grant, we think that is the underlying background rule. That's why all the 11... Why did they put it in 3 then? Oh, because 3, and I said this to Justice Zimmerman, is a totally different problem. It's about stays pending arbitration. There is no background, Griggs, divestiture rule. There are no 11 statutes to look at. But conceptually, conceptually, let me just ask you conceptually. You say when a court has granted arbitration and we know that it's actually going to go on and we could have the conflict problem that you talk about, that Congress would have to say that a stay is required. But as Justice Kagan points out, in a world in which we don't know whether or not arbitration is going to happen, you say somehow the background rule is that a stay is automatic. That seems exactly backward to me as to what it is that we should think about Congress's intent with respect to stays. Justice Jackson, Section 3 is about an entirely different problem, which is if the court says arbitration is going to happen, then you can't have further district court proceedings. There's no clash between two different courts like Griggs in that circumstance. So Congress had to affirmatively come in and say something. By contrast, when Congress takes the unusual step, which it almost never does, of saying we're granting you a right to an interlocutory appeal... The question of whether or not you get to go to arbitration, Congress doesn't have to say in that scenario that the underlying stay occurs. They would have to say it when you definitely get arbitration, but they don't have to say it when we don't know whether or not you get arbitration, but they're just giving you a right to go to the court of appeal. So basically, if I understand the question, I think that's right. That is, Congress here is saying it's a one-sided appeal right, only if your arbitrability is denied. And if it's denied, then your right is so valuable that we don't want you to wait to have to go through the district court process. The right to go to the court of appeal to see whether or not you can arbitrate is so valuable that we have to say that there's a stay in that... I'm sorry, that we don't have to say there's a stay in that scenario. But once you actually have the right to go to arbitration, Congress would have to say it in the statute. They'd have to say it with respect to staying district court proceedings vis-a-vis an arbitral court, because there is no background rule there, but there is a background rule here, and Congress is acting against that backdrop rule. Otherwise, these 11 statutes are total surplusage. They're totally irrelevant if you think that Congress has to affirmatively authorize an automatic stay. In none of those 11 did they authorize an automatic stay. They, in fact, said the reverse. And they said the reverse because the only way of making sense of them is to say they were doing something there. What were they doing? They were ending the automatic stay that would otherwise exist under the background principle of law, going back to Howey in 1883. Thank you, Counsel. Mr. Zavarie? Mr. Chief Justice, and may it please the Court. Congress says what it means, and it means what it says. So let's begin, as we must, with the text of Section 16 of the FAA. Congress says nothing in Section 16 about mandatory stays. And this Court has held, in the Scripps-Howard case, that Congress would not, without clearly expressing such a purpose, deprive the courts of their customary power to order stays under review. So what if we look beyond Section 16? Again, this Court has held under very similar circumstances in the Enkin case that when Congress includes particular language in one section but excludes it from another section of the same act, that Congress acts intentionally and purposely with respect to the disparate inclusion and exclusion. And here in this case we have two examples of this inclusion-exclusion dichotomy. First we have Section 3 of the FAA itself, which includes a mandatory stay, and then we have Section 1292d4b, which was part of the same act as Section 16. Under basic rules of statutory construction, then, Section 16 cannot be said to harbor a hidden automatic stay provision. And as a practical matter, this means that the courts retain their equitable power to use their discretion to issue stays when appropriate, a power that has been vested in this Court since the founding of the Republic. And that is as it should be, because stays are an important power and are important when appropriate. But whether they are appropriate depends. With respect to Section 16 appeals, it depends on the type of discovery allowed for under the arbitration clause. It depends on the strength of the arbitrability appeal. It depends on the weighing of the equities. And it depends on the public interest at stake in the underlying litigation. Let me just finish by saying there is no such thing as a Griggs divestiture rule. That is made up by my friend on the other side. Griggs is a simple principle that says two courts should not be deciding the same issue at the same time, and it has no bearing in this instance. Thank you, and I welcome your questions. If your argument is that these are just equitable powers that the courts exercise in preexisting equitable powers, what exactly is accomplished by Section 16? Section 16 is designed to expedite the appeal. Congress was putting its thumb on the scale in order to favor arbitration in a very particular way, to get that decision to the Court of Appeals quickly and to be decided as quickly as possible. But it's also important to note that that's as far as they went. I believe, as Justice Kagan said, if they wanted to do more, they could have. And as Justice Gorsuch held in the Henson v. Santander case, you can't presume that they would have gone further than they actually did. And this court also held the same in the first options case when another party tried to take Section 16 and say, well, look, they gave this power through Section 16. Let's add some more superpowers to Section 16. Let's increase the standard of review to make it even harder to defeat arbitration clauses. You said, I'm sorry, how would you, give me an example, and this will be my final question, but give me an example of irreparable harm in your analysis of whether or not there should be a stay. There are a number of instances and cases where there have been found to be irreparable harm in courts below when courts have applied the NKEN standard. One of those examples is when there's an especially lengthy appeal courts have held. That creates irreparable harm. When there's no formal discovery allowed for in the arbitration clause, but under those circumstances, there could be, they've been found to be irreparable harm. When there's an arbitration clause that forbids class claims, courts have found there to be irreparable harm. So there are a number of, when you get close to trial, there's irreparable harm. So it's not as though there's no instance of irreparable harm. Courts have repeatedly found in appropriate circumstances applying the NKEN standard that there can be irreparable harm. You started by saying Congress means what it says and says what it means. I agree completely with that. But this problem here is the statute's silent on the question. So it seems like we have to look to whether there's a background principle and look to the existing body of the U.S. Code to figure out what Congress usually does. You say the Griggs background rule is made up, but it is a principle. It seems to me the question is whether it applies here. I don't think it's not a made up. It's a real case, and we've got to figure out if the principle applies here. And then second, Mr. Caccio, I think you need to respond, says that if you look at the body of the U.S. Code, Congress is explicit when it doesn't want to have a mandatory stay accompanying an interlocutory appeal, and it's done so in 11 statutes. So you want to answer those two things? Yes, Your Honor. Let me start with the first one. I'm not saying that Griggs doesn't matter, and I'm not saying that Griggs is not an important principle. What I'm saying is that it is not the background rule in Congress's silence with respect to stays. The background rule started with the All Writs Act. It started with the Judiciary Act of 1891. You are correct about that. Why the 11 statutes then? Okay. So with respect to the 11 statutes, it's just wrong. There are a number of statutes that – so what he calls the 11 statutes are the ones that he says displace Griggs. In the reply brief, my friend says that when it provides a discretionary standard, that it displaces Griggs, and that under those circumstances, you can have discretion. The problem is that there are a lot of statutes that are also silent, okay? And these silent statutes also have to be looked at. And one that's not in any of the briefs and is, I think, the most important is Section 1292B. 1292B says that whether or not there's a stay upon an application for an appeal is discretionary, but it says nothing about what happens when an appeal is granted, an appeal is taken. Under my friend's analysis, that means that under every 1292B appeal, a stay would be mandatory under the background rule of Griggs. I mean, I understand we have a question about how far the principle in Griggs goes, but do you dispute that there is a one-court-at-a-time rule that is pretty ancient and goes back to the common law? I mean, how far that rule extends and whether it goes this far is a really good question, but do you dispute that principle that a lower court could essentially undermine appellate jurisdiction over an issue that the Court of Appeals has before it? Absolutely not, Your Honor. I think that's a foundational principle. It was enunciated in Griggs, but it wasn't invented in Griggs. It's hundreds of years old, right? It's been there forever, and the point is that you don't want two courts deciding the same issue at the same time. Justice Thomas, in his concurrence in the Price v. Dunn case, articulated that principle very clearly and talked specifically about the exact claim being decided. There was a preliminary injunction. Sure, the whole case really revolves around does this fall in that rule or not, but we agree that that's a rule. Absolutely, Your Honor, absolutely. Can I ask about the consequences of your friend on the other side winning this? Justice Kavanaugh asked him, well, what if you lose? I'd like to ask what if he wins, and my concern is a little bit about confusion with respect to our collateral order doctrines and the extent to which people would think that any dispositive motion that is denied and that could be appealed up to the Court of Appeals would somehow be authorized as a result of this. Because he says, for example, this is integral. This is touching upon what's happening with the progress of this litigation because the order is about arbitration, and that's another forum, and if we continue to go to trial, we will undermine our right to arbitrate, and I would think there's like a lot of pretrial dispositive circumstances that bear those same hallmarks. So if the court denies a motion for a statute of limitations or the court denies a motion for dismissal under personal jurisdiction problems, all of these scenarios, I think, kind of have that same inherent problem, so I'm a little worried about conceiving of a denial of arbitration as being so integral to the merits determination that he wins under that theory. So am I right about that or not? You are, and let me start with something from digital equipment, which said that virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a right to not stand trial, right? And so under that articulation, if you were to go that far, that encompasses a whole lot of things, including the ones that you mentioned, Justice Jackson. So if he's relying on the Griggs rule on that basis, then would he be opening up a can of worms with respect to other people making Griggs-type arguments about the right to appeal and therefore stay the underlying proceedings? Well, yes, absolutely, particularly because he places so much emphasis on this unfortunately untrue claim that there are no other statutes that are silent with respect to the discretion without mentioning 1292B, which includes most interlocutory appeals and is deadly silent, and that includes forum selection, that includes venue, personal jurisdiction. Well, you'd agree in 1292B cases, again, the district court couldn't do certain things, that its jurisdiction would be divested with respect to some portion of the case that's now pending in the court of appeals. Under Griggs, perhaps. Again, we dispute how far that goes, but we'd all agree that that's a thing, right? It is, but what my friend on the other side is saying is that it's an automatic stay of everything. Well, that's the question, is how far the stay reaches, not whether a stay exists, because you'd agree, again, that under 1292B that the district court couldn't do something that would undermine or thwart the court of appeals' jurisdiction over the case. Yes, that's what our position is, and that's what the statute says. Okay. But that's happening on a case-by-case basis. With respect to the McKim factors, if I might for a second, I just want to understand what realm of agreement we have. If we were to go down that road, I thought I understood you to say to Justice Thomas that it would be appropriate to enter a stay when the appellate process is particularly long. It could be, yes. Or the arbitration agreement provides for no formal discovery. It could be, yes, Your Honor. And no class claims. Yes. These were examples from particular cases that I was giving. And also when it gets close to trial, then a stay might be appropriate. Yes, Your Honor. Okay. Well, in all of those situations, how would the requirement of irreparable harm be met when the party denied, whose motion to compel arbitration was denied, says what we're going to suffer is $5 million in discovery costs, or if it's going to go to trial, the trial is going to cost $5 million. Would that be irreparable harm? Let me answer it this way. It depends. It might. Obviously, this Court has held that generally, writ large, that the discovery costs themselves are not irreparable harm. But if you had a situation like some of the courts below have decided, where in the arbitration rules themselves there's no discovery, and the judges are looking at that and saying, huh, well, this is a pretty strong appeal, and a lot of discovery would happen here. And look at the arbitration clause itself. It says there's no discovery. Under those circumstances, they have held that that is irreparable harm. Well, what would be the irreparable harm if the only harm is very substantial litigation costs?  As compared to what would happen in arbitration. So those things can't be separated. They have to be taken together. If it's just a lot of money, then that is not irreparable harm. But if the alternative is that you could be in a situation where you do not have to spend any money, there is no discovery at all, then under those circumstances, it might be irreparable harm. Either litigation costs count or they don't count. Why does it matter whether you have zero litigation costs in arbitration, which of course will never be exactly the case, and you have very heavy arbitration costs if you have to go ahead with the district court proceeding? It's still litigation costs. It is indeed, Your Honor. But the district courts have looked at this and have determined that under certain circumstances, depending on the nature of the arbitration, that that can constitute irreparable harm. Was that right? I think that it is because I think it's important that the standards in INCAN remain flexible. And I think that it's important that, yes, this court has held that monetary expense alone is not irreparable harm in most circumstances, but that doesn't mean that you can't look at what would happen in arbitration as you make that determination. What if the district court says, I'm going ahead with the trial? Well, first of all, we're not aware of that happening ever in any case. But if that were to happen, then the circuit court could issue a stay and this court could issue a stay. And, in fact, that's exactly what this court did in the Henry Schein case, where the district court was intent on moving forward with the trial. And while an arbitrability issue was pending and kept going back down, and they kept trying to move forward, and finally this court said no. And so when I speak about the INCAN standard and the power of the courts to issue stays, it's not just the district court that has the power. It's the circuit courts that have the power, and it's this court that has the power. In this case alone, my friend on the other side sought a stay in both cases in the district court. They sought a stay in the Ninth Circuit, and they sought a stay here. And all three courts denied the stay, applying the INCAN standard. Your concern is the delay of the appeal, I think, stated concern, how long it takes. The other side's concern, I believe, is that they think they correctly bargained for arbitration, and they have a right that Congress has given them to have the appellate court determine that, and that they're not going to be able to afford themselves that congressionally granted right, because if the district court discovery goes forward in a class action context, that is going to coerce massive settlements, and they don't want to be coerced into massive settlements without having the opportunity to take advantage of the right that Congress has given them to have an appeals court decide whether arbitration is the appropriate forum. How do you respond to that? Well, first, let me speak to the actual situation on the ground with respect to once that happens. First, you've already got a district court that has ruled that there is no valid arbitration clause. Could be wrong, and the statistics show that they sometimes are wrong in any event. Under one of the amicus breaches in the Ninth Circuit, they're wrong 29 percent of the time. Let's assume they're wrong. They're not right every time. They have crowded dockets. They have to move quickly. They're not correct every time. And in 62 percent of the times that they're wrong, Your Honor, the courts have issued stays. So that's one piece of it. The second piece of it is I think what Justice Kagan was talking about is that the other side also has a right. The other side also has a right to move forward with their litigation, and there are risks associated with slowing down the litigation. I agree with that. But is it the solution to this to make sure that the appeals move fast? And then your stated concern, at least, is solved so long as they really do move quickly. Exactly, Your Honor, and that's exactly the remedy that Congress came up with. And wouldn't that be the remedy either way, who wins? Either way. It doesn't tell us who wins as between the two of you. Whoever wins, the appeals should move fast. Can I give an example? Right, but the problem, just to answer Justice Kagan's question, is that the coerced settlement problem exists still, which they say they have a congressionally afforded right to an appellate determination of whether arbitration is the appropriate form, and they're not really going to be able to get that if they're coerced into a massive settlement because of the discovery. I'm just telling you what the concern is, and I think that's realistic. So just to tell you where I am. I understand, and I appreciate that. But I will say, Your Honor, is what you're looking at now are policy concerns, right, and policy concerns that could have been addressed by Congress when they were concerned about these policy concerns. They wanted to get these appeals heard quickly, and they came up with a way to do it. Their way to do it was to enact Section 16. That goes back to whether there's a background rule. Precisely. On the delay question, let's just go back to that if we can. Isn't there a solution in this case if appeals courts move quickly? A solution to your problem if appeals courts move quickly. Just yes or no. There could be, yes. Is there also a solution to Mr. Katyal's problem if appeals courts move quickly? Well, with all due respect, I don't think so because I think his problem is that he wants delay, that his clients want to hold these cases up. But if what he wants is what Justice Kavanaugh suggests, which is not to be subject to a lot of settlement pressure, then if the appeals court moves quickly, he's not going to be subject to a lot of settlement pressure. Let me give an example if I could. Bradford Scott. Well, then should we have an automatic stay on the discretionary factors to answer Justice Kagan's question if discovery is about to be ordered? Where would that come from? That would be made up out of whole clause. Well, you said that a lot of district courts are granting it. Well, they're not automatic. I thought you said they were correct to Justice Alito. Is that wrong? They're applying the INCEN standard. It's not automatic. Isn't the whole dispute between the two of you whether or not these are mandatory, meaning taken out of the district court's discretion, versus having the district court look in every case and make a decision? I thought that's really what was at the heart of this. Is that the daylight between the two of you on this issue? That's absolutely the question, and I still struggle to understand how my friend on the other side continues to say that there is a divestiture rule Right, so given that that's the scenario, I guess I'm just wondering whether the concern that Justice Kavanaugh has put on the table is actually ever going to materialize, because in a situation now where Congress has given Coinbase and other defendants in this situation the ability to go to the appeals court, I'm wondering if they're ever really coerced into settlement. I mean, that seems like a pretty significant arrow in their quiver to not settle because they're about to go to the appeals court, and hopefully the appeals court will move quickly and resolve this in their favor. Absolutely, and I'd like to go back to your question. It answers both of your questions, Your Honors. The Bradford Scott case, which is Judge Easterbrook's case that established the majority rule, right? Four months later, a separate panel looked at that arbitrability clause and said, there's no valid arbitration clause here. Four months later, and it was sent back down, and the parties were able to litigate again. There is no need under circumstances like that for a mandatory stay. And another point to keep into consideration, Your Honor, with respect to irreparable harm and all of these other concerns, the courts also fashion partial stays. In our case, in the Bielski case, there's no class-wide discovery. We can't force an inter rorum class settlement when the judge isn't allowing us to do class discovery. I'm sorry. Just one last point. The only discovery so far is they produced eight documents. That's not causing irreparable harm. I wanted to give you a chance to respond to an argument made in the reply brief, and that is the reference to the criminal interlocutory appeal statute, 18 U.S.C. 3731, which doesn't make any mention of stays, and yet it's widely understood that that does result in a stay of district court proceedings while the case is on appeal, while the issue is on appeal. I don't think that's what Judge Posner held there, actually, Your Honor. I think what Judge Posner held there was that to the extent that there's divestiture, that it is narrow, and he actually said that the government's argument that a notice of appeal automatically divests the trial court of jurisdiction over the case is overbroad, and that the issue is making sure the two courts do not step on each other's toes. That, I submit to you, is what Griggs is about. It's making sure that when the court of appeals is deciding an important issue that has something to do with the case below, that that is not in real time moving below, that the court of appeals is not shooting at a moving target, that that is frozen in time so that the court of appeals can make that decision based on a fixed record and not have it change, not have the ground move underneath its feet. And so I don't think that the Centriachi case holds anything otherwise. I think that court actually was very consistent with our argument here. And again, to be clear, this is another one of those cases, this is another one of those statutes that is silent. And under my friend's interpretation, that means that there should be an automatic stay because it's silent. But that is not what Judge Posner said. Judge Posner said no, that their interpretation is overbroad. Now, he didn't let them impanel a jury. He said we need to slow down, slow your horses on that one. But he said you could go forward with some other, with discovery, with other criminal proceedings. Give me your best answer to Judge Easterbrook's position, which was articulated by Justice Barrett earlier, which is, in essence, this is like sovereign immunity, qualified immunity, because it's a question of being tried at all, not tried, but litigated at all. What's your best response to that? Well, let me answer the question directly by saying that it is, immunity is the right not to be held into any court, any forum, anywhere, any time. Right, it's not an issue of being held into court, it's an issue of being litigated and being liable. Litigated anywhere, whether it's in court, whether it's an arbitral tribunal. Finding of liability. Anywhere. You're free from liability. Well, not only are you free from liability, you're free from the indignity of having to take the stand. You're free from the indignity of having someone taking discovery against you. You're pushing too far, counsel, because that's what they say they bargained for, not to take the stand, not to be public. I beg to differ. I think arbitration is not necessarily public, it generally isn't. I've arbitrated in many cases. There is no presumption of confidentiality under AAA or JAMS rules. All of my arbitrations are public. I do agree with you, counsel, that there's no confidentiality requirement outside of the terms of the agreement. And I will also say that Laura Lyons is probably the best case with respect to that, which holds that entitlement to avoid suit is different from an entitlement to be sued in a particular forum. Well, what do we do about sovereign immunity, then, which is about which forum cases will proceed very frequently? It may mean that you can't be hailed into a different sovereign's court. You have the right to be hailed only into your court and only to the extent you have consented to it. Yes, again, I think that if you're talking about state sovereign immunity, for example, I think that's the best example that I think that my friend from the other side came up with. I think all the other immunities are easily answered. Qualified immunity is qualified immunity from suit under federal law. You may still be liable for state tort actions. You could be, right. But the point is that an immunity has been established that has to be respected by the courts. But arbitration is not an immunity. It is what it is, but it's a choice of forum. And qualified immunity is a federal doctrine for federal lawsuits, and it doesn't control in state court for state lawsuits. Very frequently, police officers are hailed into court for torts. But as soon as you're hailed into federal court or as soon as a state is brought into federal court, their right under the 11th Amendment or under qualified immunity, that right is destroyed. Sure. As opposed to arbitration. They say, we are right. We just didn't bargain for this court. We didn't bargain for this forum. And what is the difference? Well, first of all, the court hasn't held yet that. No, of course we haven't. That's why I'm asking you. Well, but my point is that with respect to sovereign immunity, all the immunity questions, right, there's never been any holding other than these lower court holdings that there should be an automatic stay. There's some holdings relating to the collateral order doctrine. So you have a silver rule with those decisions along the way implicitly, too. Yes. Okay. Justice Thomas? I'm just curious. You said you've arbitrated quite a few of these. How does this play out? And, of course, I've been on the other side of those cases like Terminex. But how does it play out in state court? In terms of the type of discovery allowed for? Yes. Usually a lot more discovery in state court than you have in federal court. And this particular issue that we're confronting here. Oh, I'm sorry. I don't know the answer to that question, Your Honor. Justice Alito? Justice Sotomayor? There is a possibility if we say that a stay is mandatory that we could have a situation, isn't there, where state courts could say no? Yes, absolutely. In a state proceeding? Yes, the states are free to do as they wish. Because this section only involves federal courts. Absolutely. So we would be creating an incentive for petitioners to file their suits in state court if they can. Yes, Your Honor. And CAFA is another one of those statutes that is silent with respect to whether a stay is mandatory or not. Justice Gates? I might not have understood the colloquy between you and Justice Gorsuch, but I wanted to make sure that it was clarified, at least for me. I think what Justice Gorsuch was saying is that there are opinions that do give automatic stays with respect to established immunity doctrines. Lower court. Lower court. And then he said, well, do we have to say that those are wrong in order to rule for you? Oh. And I think you said, yes, you do. And I don't think that that's what you want to say, is it? No, I don't. Thank you. Maybe I should have directed my question to Justice Kagan. Well, I think you misunderstood his question. I did. I did. I appreciate it. Well, what I would say is they were wrong to the extent that they applied Griggs to come up with their analysis, right? I mean, Griggs doesn't provide the basis for saying that a sovereign immunity case should be stayed pending the appeal. But you're not contesting that there are distinctions that can be made between those immunity doctrines and this. Those immunity cases should be stayed, but not under Griggs. Okay. I thought that that's what you meant. Thank you. Justice Barrett. Oh, I'm sorry. Justice Gorsuch. Justice Kavanaugh. Now Justice Barrett. Justice Jackson. Finally, if we say that a stay is mandatory, I guess I'm still fixating on Justice Kavanaugh's questions about settlement pressure and the equities. And I'm wondering whether the settlement dynamic doesn't shift dramatically in a defendant's favor if we say that. Because to the extent that the defendant doesn't want trial, they don't want arbitration either, really. They're the defendant. So wouldn't we have a dynamic in which the exact opposite of the appellate court going fast would happen if they get an automatic stay? They get it, and then it takes like months for the appellate court to rule, and that's just fine with the defendant. That's very real pressure. Look at this case where Coinbase, the entire cryptocurrency market is collapsing under our feet, and other interchanges' competitors with Coinbase are going bankrupt left and right. And we've got a client who lost $30,000, and we're getting calls from other clients who've lost hundreds of thousands of dollars. In the meantime, you know, wondering whether Coinbase is going to be around by the time these appellate court decisions are decided. So absolutely there's an interest on the other side that could push people to try and settle early to try and escape harms like bankruptcy. Changes in arbitration agreements, sometimes the parties, the defendants will actually, in this case again, issue a new arbitration clause during dependency of this very appeal. So there are pressures on the other side that can force plaintiffs with valid claims to undervalue their cases and settle them. Thank you, counsel. A rebuttal, Mr. Katyal? Thank you. As Justice Kavanaugh said, the question is how to read congressional silence, and you look to background principles. Here the question of Congress' silence we think is far more appropriately directed at my friend on the other side. Eleven times Congress affirmatively said no automatic stay during interlocutory appeals they authorize, including the very day before 16A. What were they doing if the divestiture rule didn't apply? All 11 statutes would be surplusage and irrelevant. And here the statute in 16A is silent. We've offered a very good reason for it because the divestiture rule applies. That's the background principle. And that is the principle for qualified immunity, for state sovereign immunity, as Justice Gorsuch was saying, for double jeopardy. Here it's even stronger because this isn't just a judge-made principle. It's one that follows from Congress' authorization, just like those 11 statutes. It's just they didn't trim back the rule. Second, Griggs is not just about the same issue being decided. The language of Griggs, which I read to you before, is that the aspect has to be involved in the appeal. That's how Wright and Miller see it. That's how the immunity cases see it. That's double jeopardy cases and the like. And there's a massive harm in the interim. Take class discovery, for example. The reason you have an arbitration agreement, in part, is to avoid this extensive class discovery, which would otherwise happen in the interim. The amici briefs detail this in a lot of detail. My friend says, oh, there's not much discovery in these cases. Take this very case. He just filed an eight-page letter on us with, you know, massive amounts of discovery requests in that. And that happens all the time in these cases, and you can't remedy that after the fact. My friend even admitted litigation costs can't be recouped. And so take the thousand hours we've spent in the interim in this case. If you don't get an automatic stay, attorneys will have to spend that kind of money. Clients will have to spend that kind of money. There is no way to put that toothpaste back in the tube. That's also true of the discovery problems and the spilling out in the public domain and Judge Friendly's concern about coercive settlements. Third, Justice Jackson, you asked about personal jurisdiction, opening a can of worms, a forum nonconvenience, and things like that. Very simple answer. You don't have a stay in any of those cases because you don't have a right to an interlocutory appeal in the first place. So those cases don't arise, and those are the forum selection cases he's citing. They just say, sorry to interlocutory appeal. Doesn't matter. Here in 16B, there's a unique right to an interlocutory appeal, which makes this different. Fourth, he talks about 1292B, which he admits isn't in his brief. I think it's not in his brief for a good reason, because 1292B has an anti-stay provision in it, precisely, which isn't here. It doesn't cover every case, but it covers a lot of cases. And then with respect to the cases it doesn't cover, the courts hold that Griggs does apply in those cases in which there's a discretionary certified appeal. Dayton is a case from the Fifth Circuit in 1995. Greenleaf is a case in the Eleventh Circuit. L.A. v. Santa Monica in the Ninth Circuit. Many cases say that. And, of course, it's a very different posture in 1292B, because that is a discretionary right for an interlocutory appeal. And it would follow if you have a discretionary right, you could imagine having a discretionary stay. This is not a discretionary stay. This is an unusual circumstance. Congress has said you have an automatic, non-discretionary right. What were they doing to give you that right, if not to protect also litigation in the interim? Whenever Congress is worried about the kind of policy consequences of delay and, you know, a company going bankrupt, as my friend speculates. Obviously, that's not Coinbase, but it may happen in the future with other cases and other clients. Congress knows exactly what to do. They write, as they've done 11 times, no automatic stay. That is precisely what is missing here. And, finally, that brings me to my friend's point about the trials. I can't understand, frankly, his position on trials. I think he said that a trial could take place. There's no automatic stay. It's up to the trial court's discretion. That can't possibly be the law. That can't possibly be the understanding of Griggs. Rather, we think in every context, whether it's state sovereign immunity, qualified immunity, or double jeopardy, the rule is always the same, which is the divestiture rule applies, and the only question is the scope of that rule. And if a party is saying, for example, that they want discovery or they want, you know, a court to decide a motion, that is something that undoes the appeal right. It moots it out because there isn't a way to recover that discovery after the fact. There isn't a way to recoup those litigation costs after the fact. There's no mechanism for that, and that is the very right Congress protected in the FAA. Thank you, counsel. The case is submitted.